IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JEANETTE D.,[1]

        Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:18-cv-01578-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    Plaintiff Jeanette D. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3). For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the initial of her last name and does the same for other individuals whose identification could affect plaintiff's privacy.

1 – OPINION AND ORDER

## PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on February 10, 2014, alleging an amended alleged disability onset date of March 31, 2009. Tr. 15, 47, 189-197, 198-99, 214. Her date last insured was March 31, 2012. Tr. 49. The Commissioner denied plaintiff's applications for benefits initially and on reconsideration. Tr. 68-91, 96-119. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 17, 2016. Tr. 7-39, 143-45. After hearing testimony from plaintiff and a vocational expert, ALJ Robert Spaulding issued a decision on May 15, 2017, finding plaintiff not disabled within the meaning of the Act. Tr. 47-61. The Appeals Council denied plaintiff's request for review on June 22, 2018, making the ALJ's decision the final decision of the Commissioner, subject to review by this court. Tr. 1-6; 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from

the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); see also *Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff met the insured status requirements of the Act and had not engaged in substantial gainful activity since her amended alleged onset date, March 31, 2009. Tr. 49. At step two, the ALJ determined plaintiff suffered from the following severe impairments: migraines; mild degenerative disc disease; bilateral patellofemoral disorder; and obesity. Tr. 50.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 52. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform sedentary work as defined in 20 C.F.R. § 404.1567(b), but was limited to: frequent climbing of ramps and stairs; no climbing of ramps or scaffolds; frequent stooping, balancing, kneeling, crouching, and crawling. Tr. 53. Plaintiff also was to avoid "exposure to hazards, such as moving mechanical parts and unprotected heights." *Id*.

At step four, the ALJ found plaintiff was capable of performing past relevant work as a data entry clerk. Tr. 60. Because the ALJ found that plaintiff could perform her past relevant work, he did not proceed to the fifth step of the sequential analysis. Tr. 60–61. The ALJ thus found plaintiff was not disabled within the meaning of the Act. *Id.*

## DISCUSSION

Plaintiff contends the ALJ erroneously rejected her subjective symptom testimony, the medical opinion evidence, and lay witness testimony.

### I. Subjective Symptom Testimony

#### A. Hearing Testimony

At her November 2016 hearing, plaintiff testified that she had past full-time work experience as an office manager and pharmacy technician for a drug store in the early 2000s and later as a bank teller for Wells Fargo. Tr. 16-18, 20-23. She explained that her migraine headaches were the "main hindrance to being able to work[.]" Tr. 21. Plaintiff's migraines were triggered by various foods, smells, and situations, including "crowded place[s]" and noise. Tr. 22. Plaintiff explained that she "attempts to avoid these things," Tr. 22, but experienced migraines between four and six days per week, which can last "anywhere from eight to twelve hours up to a couple of days." Tr. 23.

Plaintiff testified that she took daily preventive medications and a "different medication on the onset and during" a migraine. Tr. 24. At the onset of a migraine, plaintiff took Phenergan for nausea and Fiorinal with codeine, which caused her to become "sleepy or drowsy" and have to "lay in a quiet, dark bedroom." Tr. 27-30. Plaintiff further explained that she cannot complete her normal daily activities during a migraine. Tr. 30; *see also* Tr. 31 ("I can't function with a migraine."). Plaintiff's medications helped alleviate her migraines "most of the time . . .

but not always and at that point [she had] to be taken to the emergency room." Tr. 28; *see also id.* (explaining that her medication can help "make it to where the pain [was not] so bad [she had] to go to the hospital, but it [did not] take the headache necessarily away").

In response to the ALJ's question about how she worked at Wells Fargo while suffering from migraines, plaintiff testified that she "missed a lot of work" and "did what [she] could," but she "called in a lot and eventually lost [her] job." Tr. 22; *see also* Tr. 31 (discussing a migraine plaintiff "tried to work through" that resulted in her fainting and requiring an ambulance trip to the emergency room). Although plaintiff could not recall the precise number of migraines she was experiencing per week at the time she was terminated from Wells Fargo, she testified that she was let go after being "written up three times." Tr. 23.[2] Finally, plaintiff testified that her migraines increased in frequency and length as she had gotten older. Tr. 29; Tr. 31.

B.  **Relevant Law**

A two-step process is employed for evaluating a claimant's testimony regarding the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

---

[2] In response to a question from the ALJ, plaintiff clarified that she did not quit and Wells Fargo in fact "let [her] go." Tr. 22.

5 – OPINION AND ORDER

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [the claimant's] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminated the reference to "credibility," clarified that "subjective symptom evaluation is not an examination of an individual's character," and required the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

C. Analysis

The Commissioner relies on three of the ALJ's stated rationales for rejecting plaintiff's subjective symptom testimony: (1) plaintiff's migraine complaints were longstanding; (2) plaintiff applied for and received unemployment benefits; and (3) plaintiff migraines improved with treatment.

1. **Long Standing Impairments**

The ALJ found that the record showed "a long history of migraine headaches for at least 35 years,"; however, there was "no evidence of any significant exacerbation in [plaintiff's] medical conditions that would support her assertion that she quit working for medical reasons." Tr. 55. The Commissioner asserts that an ALJ may discount reports of longstanding impairments when they have not been disabling in the past. Def.'s Br. 3 (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). In *Bayliss*, the court affirmed the ALJ's rejection of a doctor's limitations regarding the plaintiff's ability to pay attention, concentrate, and organize where they had not prevented the claimant from "completing high school, obtaining a college degree, finishing a Certified Nurses' Aide training program, or participating in military training." *Bayliss*, 427 F.3d at 1216.

Here, however, plaintiff consistently reported that her migraines had increased in both frequency and length over time. Tr. 29; *see also* Tr. 31 ([Question]: Are the headaches more frequent now than they were when you were working at Wells Fargo? [Answer]: Yes."). Moreover, unlike *Bayliss*, plaintiff was unsuccessful in her past activities, including her failed attempt at full-time employment and termination from Wells Fargo for absences directly caused by her migraines. Tr. 18-19, 22-23; *cf. Legore v. Colvin*, No. 3:13-cv-01249-KI, 2014 WL 3101443, at *6 (D. Or. July 7, 2014) (distinguishing *Bayliss* by noting that the activities

described therein were "varied in nature, in comparison to [the claimant's] past work of limited breadth"). As such, this was not a clear and convincing reason to reject plaintiff's testimony relating to migraine headaches.

### 2. Unemployment Benefits

The ALJ found that plaintiff "applied for and received unemployment benefits after her alleged onset date," which suggested "the intensity, persistency, and severity of [her] symptoms may not be accurately reported." Tr. 56. While receipt of unemployment benefits can, in some circumstances, undermine a claimant's alleged inability to work full-time, under Oregon law a person with a disability may apply for unemployment benefits so long as the person is able to perform "some work." O.A.R. 471-030-0036; *see also Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). In other words, a person may apply for, and receive, unemployment in Oregon even if that person has a physical or mental impairment and is limited to part-time work. *Id.; see also Merritt v. Comm'r of Soc. Sec.*, No. 6:16-cv-00244-CL, 2017 WL 4570296, at *6 (D. Or. Oct. 12, 2017). Indeed, the Ninth Circuit has explained that an ALJ may discount a claimant's credibility for receiving unemployment benefits only where the record establishes that the claimant "held [her]self out as available" for full-time work. *See Carmickle*, 533 F.3d at 1162.

Here, a careful review of the hearing transcript shows that although plaintiff responded in the affirmative to a question by the ALJ concerning whether she held herself out as available to work, she qualified her response by stating she did not know when she would have a headache and how many days she would miss. Tr. 22-23. Plaintiff's testimony fails to unambiguously establish that she affirmatively "held [her]self out as available for full-time" work given the unpredictability of her migraines. *See Carmickle*, 533 F.3d at 1162. Accordingly, plaintiff's

application and receipt of unemployment benefits was not a clear and convincing reason to reject her subjective symptom testimony. *See Merritt*, 2017 WL 4570296, at *6 (explaining that where "the record does not establish that the claimant held herself out for full time work, receipt of unemployment benefits is not a basis for the ALJ's credibility finding") (citing *Carmickle*, 533 F.3d at 1161-62).

### 3. Improvement With Treatment

In rejecting plaintiff's testimony, the ALJ highlighted evidence indicating plaintiff's migraines improved with treatment. Tr. 56. The "type, dosage, effectiveness, and side effects of any medication" of medication are appropriate factors for an ALJ to consider in assessing a claimant's subjective symptom testimony. 20 C.F.R. § 404.1529(c)(3). Further, "[i]mpairments that can be controlled effectively with medication are not disabling[.]" *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The Commissioner relies on three treatment notes in support of the ALJ's decision; however, none of these notes establishes that plaintiff did in fact improve with treatment. First, the Commissioner refers to a treatment note from April 2007—notably, two years before plaintiff's amended alleged onset date—in which plaintiff reported the frequency of her migraines decreased. Def.'s Br. 4 (citing Tr. 507). To the extent this treatment note is even relevant to plaintiff's disability during the period at issue, the court observes that in the same treatment note, plaintiff reported that her migraines at times included multiple occurrences per week and the treating provider doubled plaintiff's Topamax medication to 200 milligrams. Tr. 507.

Next, the Commissioner directs the court to a July 2012 treatment note in which plaintiff reported that Topamax "seem[ed] to be helping her frequency of migraines." Def.'s Br. 4 (citing

Tr. 401). However, the third treatment note, from May 2013, undercuts this assertion. While the Commissioner highlights a sentence in the May 2013 treatment note in which plaintiff reported that her migraine medication "had been working very effectively at keeping her headaches controlled," the preceding sentence states that plaintiff's migraines were actually occurring "more frequently," and the treating provider again increased plaintiff's Topamax medication by 50 milligrams. Tr. 503. As such, these three treatment notes fail to establish that plaintiff's migraines improved and therefore are not clear and convincing reasons to reject her subjective symptom testimony. *See Garrison*, 759 F.3d at 1018 ("While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must *in fact* constitute examples of a broader development to satisfy the applicable 'clear and convincing' standard.") (emphasis in original).

For all of the reasons above, the ALJ did not provide legally sufficient reasons to discount plaintiff's subjective symptom testimony relating to her migraine headaches.

## II. Medical Opinion Evidence

### A. Relevant Law

The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. *Carmickle*, 533 F.3d at 1164. The law distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *See* 20 C.F.R. § 404.1527.[3] The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. 20 C.F.R. § 404.1527(c)(2); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's

---

[3] The Commissioner has issued revised regulations changing this standard for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Plaintiff's claim was filed before March 27, 2017, and therefore is controlled by 20 C.F.R. § 404.1527.

opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Tommasetti*, 533 F.3d at 1040.

**B.     Karen Kuryla, M.D.**

Dr. Kuryla began treating plaintiff in March 2015 and treated plaintiff over a dozen times before providing her opinion in September 2016. Tr. 653, 905-07. Dr. Kuryla described that plaintiff had the following conditions: anxiety, chronic kidney disease, fibromyalgia, hyperlipidemia, hypothyroidism, and migraines. Tr. 905. The doctor indicated that plaintiff experienced four migraines per week, each lasting between eight and twelve hours. Tr. 906. Finally, the doctor explained that plaintiff was unable to function during a migraine and "ha[d] to be in a dark room." *Id.*

The ALJ accorded little weight to Dr. Kuryla's opinion. Tr. 59. The ALJ acknowledged that "the medical evidence support[ed], at times, the presence of migraine headaches"; however, the ALJ concluded that the record did not "support the frequency or severity alleged" in Dr. Kuryla's opinion. Tr. 59.

Generally, the more consistent a doctor's opinion is with the evidence as a whole, the greater weight the opinion should be accorded. 20 C.F.R. §§ 404.1527(c)(4), 416.927 (c)(4); *see also Tommasetti*, 533 F.3d at 1041 (explaining that incongruence between a doctor's opinion and

a claimant's medical records is a specific and legitimate reason to reject the opinion). Here, Dr. Kuryla's assessment regarding the frequency of plaintiff's migraines is not consistent with treatment records. Contrary to the doctor's assessment, the record reflects that plaintiff reported migraines at varying levels of frequency, usually less than four per week. *See, e.g.*, Tr. 503 (reporting experiencing "only . . . a couple of headaches per month"); Tr. 504 (reporting migraines "continue to occur at the rate of about 3 a week"); Tr. 505 ("About 3 times a week at a minimum, however, she does get a migraine . . . ."); Tr. 533 (reporting plaintiff was "totally headache free" in the preceding 15 months); Tr. 626 (reporting between two and three migraines per week); *but see* Tr. 599 (reporting "having daily headaches" after motor vehicle accident); Tr. 637 (assessing migraines 3-4 times a week). Although plaintiff offers an alternative interpretation of the medical evidence, the ALJ's interpretation of this evidence is a rational reading of the record and must therefore be upheld. *Burch*, 400 F.3d at 679; *see also Garrison*, 759 F.3d at 1009 ("The ALJ is responsible for . . . resolving conflicts in medical testimony, and for resolving ambiguities.") (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The incongruence between Dr. Kuryla's opinion and the medical record was therefore a specific, legitimate reason to discount the opinion.[4]

## III. Lay Witness Evidence

The record in this case was supplemented by the lay testimony of multiple friends and relatives. Tr. 304-11. Generally, the lay testimony described plaintiff's history of migraines and

---

[4] Because the court concludes the ALJ supplied at least one specific, legitimate rationale the court need not discuss the alternative rationales articulated by the ALJ and the parties. *See Djuana J. v. Berryhill*, No. 3:17-cv-1842-SI, 2019 WL 281288, at *5 (D. Or. Jan. 22, 2019) (explaining that where an ALJ supplies "at least one specific, legitimate reason, the Court need not" reach alternative rationales).

how the impairment interfered with her ability to attend family functions and affected her ability to function. *See id*.

A. **Relevant Law**

Lay-witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an ALJ must provide "reasons that are germane to each witness." *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012)). Further, the reasons provided must be "specific." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)). Where the ALJ has provided clear and convincing reasons for rejecting the claimant's symptom testimony, and the lay witness has not described limitations beyond those alleged by the claimant, the ALJ's failure to provide germane reasons for rejecting lay testimony is harmless. *Molina*, 674 F.3d at 1121-22.

B. **Analysis**

The ALJ accorded limited weight to the lay witness statements. Tr. 55. The Commissioner does not defend the ALJ's stated rationales for rejecting the lay witness statements, arguing instead that "because the ALJ gave good reasons to discount Plaintiff's allegations . . . those reasons apply equally well to the similar lay statements." Def.'s Br. 7. Accordingly, the Commissioner has waived any reliance on the ALJ's decision. *See Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (explaining that reviewing courts "will not manufacture arguments" for parties). Because the court finds that the ALJ failed to supply

legally sufficient reasons for rejecting plaintiff's subjective symptom testimony as discussed in Section I, the Commissioner's argument similarly fails.

IV. **Remand**

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Comm'r Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings or immediate payment of benefits, the Ninth Circuit employs the "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) the record has been fully developed and further proceedings would serve no useful purpose, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison*, 759 F.3d at 1020 (9th Cir. 2014) (citations omitted). Even if all of the requisites are met, however, the court may still remand for further proceedings, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021.

As discussed above, the ALJ erred in evaluating plaintiff's subjective symptom testimony and the lay witness statements. Accordingly, the first prong of the credit-as-true analysis is met. However, the record is not fully developed and further proceedings would be useful. While the record contains an opinion regarding the impact of plaintiff's migraines on her ability to work in October 2016, which the ALJ properly discounted, the record would benefit from a medical expert's evaluation of the impact of plaintiff's migraines on her ability to work throughout the entire period at issue.

Accordingly, this matter is remanded for further administrative proceedings on an open record, specifically to: (1) accept or provide legally sufficient reasons for rejecting plaintiff's subjective symptom testimony and that of the lay witnesses; (2) obtain an opinion from a medical expert assessing the impact of plaintiff's migraines throughout the entire period at issue; (3) conduct a de novo review of the medical opinion evidence; and (4) conduct any further necessary proceedings.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion and order.

IT IS SO ORDERED.

DATED March 30, 2020.

                                                            /s/ Youlee Yim You  
                                                          Youlee Yim You  
                                                          United States Magistrate Judge